686 F.2d 793
 29 Fair Empl.Prac.Cas. 1268,
30 Empl. Prac. Dec. P 33,030
 Phyllis COHEN, Danielle Hopkins, and Marianne Bires, on
behalf of themselves and all others similarly
situated, Plaintiffs-Appellees,
v.
FRED MEYER, INC., Defendant-Appellant.
Phyllis COHEN, et al., Plaintiffs,
and
Marianne Bires, Plaintiff-Appellant,
v.
FRED MEYER, INC., and Local 1092, Retail Employees Union,
Defendants-Appellees.
 
 Nos. 81-3187, 81-3226.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 4, 1982.
Decided Sept. 8, 1982.
 Susan P. Graber, Stoel, Rives, Boley, Fraser & Wyse, Portland, Or., for defendant-appellant.
 Ronald P. Schiffman, Tolovana Park, Or., argued, for plaintiffs-appellees; Patricia Watson, Tolovana Park, Or., on brief.
 Appeal from the United States District Court for the District of Oregon.
 Before KILKENNY, GOODWIN and POOLE, Circuit Judges.
 POOLE, Circuit Judge:
 
 
 1
 Fred Meyer, Inc. appeals from the district court's judgment that it violated § 704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), by retaliating against appellee/cross-appellant Marianne Bires for having filed an employment discrimination complaint with the EEOC. The court also held that such retaliatory action resulted in her constructive discharge. We vacate the judgment and remand to the district court for further findings of fact.[1]FACTS
 
 
 2
 Marianne Bires worked in the apparel department of Fred Meyer's store in Burlingame, Oregon, from August, 1969, until she quit on October 17, 1973. Originally hired as a clerk, she was promoted in late 1971 to the position of Person in Charge (PIC) which she held until early August, 1973. The apparel department had one manager and two PICs, one for fabrics (Bires) and one for clothing (Cherie Storm). In the manager's absence, the PICs performed certain supervisory duties, such as approving checks and responding to customer complaints.
 
 
 3
 In November, 1972, Bires filed an employment discrimination complaint with the Oregon Bureau of Labor and the Equal Employment Opportunity Commission (EEOC), alleging a pattern and practice of sexual discrimination in hiring and promotion at Fred Meyer's stores.[2] The complaint did not receive active attention until March, 1973, when EEOC notified Gary Baker, Fred Meyer's Vice President and Director of Employee Relations, of the charges. In May, 1973, Baker was contacted by Sandy Henderson of the State Civil Rights Division, who had been assigned to investigate Bires' charges. Baker did not tell Bires' supervisors of her complaint.
 
 
 4
 Also in May, 1973, Ron Reynolds was appointed District Manager of the apparel departments at Fred Meyer's Burlingame and Tigard, Oregon, stores.[3] Shortly thereafter, he received numerous complaints from other departments at the Burlingame store about the lack of evening managerial coverage in the apparel department. Apparently, the manager in apparel worked only one night shift a week, and both Bires and Storm worked straight day shifts. Managerial personnel in other departments working nights were thus forced to respond to apparel's customer complaints with which they were unfamiliar.
 
 
 5
 In response to this situation, Reynolds decided to implement a policy whereby PIC shifts were to be scheduled so that a PIC would always be on duty in the absence of the manager. Thus, when the manager worked the day shift, the PICs would work the opposite night shift. Another policy effected by Reynolds required all employees to rotate shifts, so that everyone would work some night and weekend shifts each week. There was no evidence that Baker participated in either policy decision.
 
 
 6
 In July, 1973, Bires and Storm learned that they would have to begin working nights on a regular basis or lose their PIC status and pay. Moreover, even if they lost their PIC status, they still would have to work some night and weekend shifts pursuant to Reynolds' second policy. Bires immediately informed Sandy Henderson that she thought she was being harassed because of her EEOC complaint. On July 26, Henderson telephoned Baker and Reynolds to discuss the new policies and Bires' claim of harassment. Both men told her that the policies had been adopted for legitimate and desirable business reasons, and would be implemented despite Bires' concerns. During this conversation, Reynolds learned for the first time that Bires had filed a complaint with EEOC.
 
 
 7
 On July 30, Bires and Henderson met with Baker and Reynolds. Baker and Reynolds again explained the reasons behind the adoption of the policies and stated that they would be maintained regardless of Bires' suspicions. They also rejected Henderson's suggestion for a delay until EEOC resolved Bires' complaint.
 
 
 8
 The policies went into effect in the first week of August, 1973. Because they chose not to work nights on a regular basis, both Bires and Storm lost their PIC status and pay. Moreover, each had to work some night and weekend shifts as part of Reynolds' rotating shift policy. According to Bires, the manager of apparel thereafter became unreasonably critical of her work, and she was expected to perform PIC duties despite her demotion. When Bires returned from vacation on October 8, 1973, a dispute arose over the calculation of her vacation pay. Although she complained to her manager, nothing was done. Finally, on October 17, 1973, Bires walked off the job after a confrontation with her manager over a work assignment.
 
 
 9
 In November, 1975, Bires joined as a named plaintiff in a class action against Fred Meyers alleging discrimination on the basis of sex in hiring and promotional opportunities. The class claims and the claims of the other named plaintiffs were settled in 1978. Bires' individual claims were tried to the district court on May 8, 1979.[4] The court concluded that she had made out a narrow case of retaliation based on the changes in her PIC status and her work shifts, and that such retaliation constituted sufficient evidence to support a finding of constructive discharge. After additional briefing, the court awarded Bires $36,831 in back pay and.$19,000 in attorney's fees.
 
 DISCUSSION
 
 10
 On appeal, Fred Meyer contends that, under the applicable legal standards governing Title VII cases, the district court's findings of fact do not support its conclusion that Fred Meyer violated § 704(a). We agree.
 
 
 11
 Section 704(a) provides in relevant part that "(i)t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because (that employee) has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge ... under this subchapter." 42 U.S.C. § 2000e-3(a). The order and allocation of proof for Title VII suits set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-1825, 36 L.Ed.2d 668 (1973), is applicable to actions for unlawful retaliation under this section. See Aguirre v. Chula Vista Sanitary Service, 542 F.2d 779, 781 (9th Cir. 1976); accord Womack v. Munson, 619 F.2d 1292, 1296 (8th Cir. 1980). The plaintiff must first establish a prima facie case of retaliation by showing that she engaged in a protected activity, that she was thereafter subjected by her employer to adverse employment action, and that a causal link exists between the two. Gunther v. County of Washington, 623 F.2d 1303, 1314 (9th Cir. 1979), aff'd., 452 U.S. 161, 101 S.Ct. 352, 66 L.Ed.2d 213 (1981); Miller v. Williams, 590 F.2d 317, 320 (9th Cir. 1979). To show the requisite causal link, the plaintiff must present evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action. See Hagans v. Andrus, 651 F.2d 622, 626 (9th Cir. 1981); see also Meyer v. California and Hawaiian Sugar Co., 662 F.2d 637, 639 (9th Cir. 1981). Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity. See Gunther v. County of Washington, supra, 623 F.2d at 1316; Aguirre v. Chula Vista Sanitary Service, supra, 542 F.2d at 781.
 
 
 12
 Once the plaintiff has established a prima facie case, the burden of production devolves upon the defendant to articulate some legitimate, non-retaliatory reason for the adverse action. See Gunther v. County of Washington, supra, 623 F.2d at 1314. The defendant need not prove the absence of retaliatory intent or motive; it simply must produce evidence sufficient to dispel the inference of retaliation raised by the plaintiff. See Furnco Construction Corp. v. Waters, 438 U.S. 567, 577-78, 98 S.Ct. 2943, 2949-50, 57 L.Ed.2d 957 (1978); Knutson v. Boeing Co., 655 F.2d 999, 1001 (9th Cir. 1981); Womack v. Munson, supra, 619 F.2d at 1296. If the defendant meets this burden, the plaintiff must then show that the asserted reason was a pretext for retaliation. Aguirre v. Chula Vista Sanitary Service, supra, 542 F.2d at 781. The ultimate burden of persuading the court that the defendant unlawfully retaliated against her remains at all times with the plaintiff. See Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); Knutson v. Boeing Co., supra, 655 F.2d at 1001.
 
 
 13
 In this case, the district court did not articulate the standards by which it evaluated the evidence and arrived at its finding of liability. It must necessarily have found that Bires made a prima facie showing of retaliation, but there is no indication whether, in the court's view, Fred Meyer failed to articulate a legitimate non-retaliatory reason for its actions, or whether its asserted reason was shown by Bires to be a pretext. More important, the court does not make clear whether its finding of retaliation was based on Fred Meyer's decision to implement the policies that adversely affected Bires, or was based on the manner in which the policies were in fact applied. If the former, the finding of liability cannot stand. If the court made the latter determination, it has not spelled it out and the case must be remanded for further fact finding.
 
 
 14
 The findings of fact which the district court did make preclude the establishment of a prima facie case of retaliation based upon Fred Meyer's decision to implement the challenged policies that lead to Bires' demotion and the change in her work schedule. Reynolds formulated and made his decision to put the policies into effect sometime in June or early July, 1973. The court, however, expressly found that, until his telephone conversation with Sandy Henderson on July 26, 1973, Reynolds was unaware that Bires had filed a complaint with EEOC. Thus, at the time Reynolds made the decision that directly resulted in the adverse action against Bires, he did not know that she had engaged in a protected activity. This breaks the requisite causal link between the decision to implement the policies and Bires' EEOC complaint. See Gunther v. County of Washington, supra, 623 F.2d at 1316.[5] The requisite causal link is not established by the mere fact that Reynolds learned of Bires' complaint prior to actually putting the policies into effect in August, 1973. An employer who has decided upon a new policy is not guilty of unlawful retaliation simply because it proceeds with the implementation of that policy after learning that one of the employees who will be affected thereby has recently engaged in a protected activity.
 
 
 15
 It is possible, however, that the court's finding of retaliation was based on the manner in which Reynolds in fact carried out and enforced the policies in question. In its opinion, the court discusses evidence which might indicate that the policies were not consistently applied throughout the stores for which Reynolds was responsible. Evidently, at the Tigard store, one employee continued to work straight day shifts despite the new rule requiring shift rotation, and another continued to earn PIC pay without having to work shifts opposite those of her manager. From this evidence, the court may have concluded that, although Reynolds originally decided to implement the policies for legitimate reasons, his motives changed after the events of July 26 and 30, and he used the policies selectively against Bires in retaliation for her activities.
 
 
 16
 If this was the basis for the court's decision, it is not adequately set out in the court's opinion for our review. There is no explicit finding that the policies were in fact selectively applied against Bires, nor are the facts that would support such a finding fully set forth. The court mentions only the two incidents of apparent non-compliance at the Tigard store. It made no findings as to how many employees were subject to the policies and how many of these were required to comply. Nor did it reconcile the fact that the other PIC in the Burlingame apparel department, Storm, suffered the same adverse consequences as Bires. Such findings are important in assessing the probative value of the evidence of apparent non-compliance at the Tigard store. Moreover, the court neither discussed nor made findings on the arguably legitimate, non-retaliatory reasons advanced by Reynolds at trial to explain the situation at the Tigard store. We are unable to determine whether the court considered these explanations, and, if so, whether it found them unpersuasive or rebutted as pretextual by Bires.
 
 
 17
 Most important, the court failed to make a finding that Fred Meyer acted with a retaliatory intent or motive in implementing the policies in question. Instead, the court stated that "(w)hile the intent of both Baker and Reynolds may have been purely to implement a desirable business policy, the conclusion is inescapable that the change, insofar as it applied to (Bires), was taken as retaliation for her earlier discrimination claim." Although ambiguous, this statement appears to us to mean that the court considered Fred Meyer's intent irrelevant to the question whether its actions were retaliatory.[6] Proof of discriminatory intent, however, is a necessary element of a disparate treatment claim under Title VII. E.g., Piva v. Xerox Corp., 654 F.2d 591, 594 (9th Cir. 1981); Heagney v. University of Washington, 642 F.2d 1157, 1163 (9th Cir. 1981). Bires was therefore required to prove that Fred Meyer acted, at least in part, with a retaliatory intent or motive. See Womack v. Munson, supra, 619 F.2d at 1297; Monteiro v. Poole Silver Co., 615 F.2d 4, 9 (1st Cir. 1980). Thus, if the intent of Baker and Reynolds was in fact purely to implement a legitimate business policy, the conclusion would be inescapable that the change in Bires' status, pay and work schedule was not taken as retaliation for her EEOC complaint.
 
 CONCLUSION
 
 18
 For the above reasons, the judgment against Fred Meyer is VACATED and the case REMANDED to the district court for reconsideration and clarification in light of this opinion.[7]
 
 
 
 [1]
 Both parties appeal various aspects of the district court's award of back pay and attorney's fees. Because we reverse on the issue of liability, we do not reach these issues
 
 
 [2]
 Bires' complaint alleged that all the higher-paid grocery clerk positions, save one, were filled by men, while the lower-paid positions in variety, apparel and fabrics were primarily filled by women
 
 
 [3]
 Reynolds was already District Manager for the apparel departments at four other Fred Meyer stores in Oregon
 
 
 [4]
 Bires also claimed that Fred Meyer had denied her promotional opportunities in its Home Improvement Center because of her sex. The district court found this claim unsubstantiated and Bires does not appeal that decision
 
 
 [5]
 There is no evidence that any company official or employee who had knowledge of Bires' complaint had any part in the policy decision
 
 
 [6]
 We cannot say, as Fred Meyer contends, that the court's statement represents a finding that the intent of Baker and Reynolds was in fact purely to implement a legitimate business policy, thereby precluding a finding that Fred Meyer violated § 704(a). The statement is too ambiguous for us to give it such effect
 
 
 [7]
 Because the finding of constructive discharge was premised entirely on the district court's conclusion that the adverse changes in Bires' status, pay and work schedule were the result of unlawful retaliation, it must also be vacated and remanded