William MADDOX, Plaintiff,

v.

COUNTY OF SAN MATEO, Richard Donati, Chief Probation Officer; Lee A. Frimmersdorf, Director of Juvenile Institutions; Richard Fagetti, Assistant Director; Don McCreadie, Senior Group Supervisor, Hillcrest, Defendants.

No. C–89–0008 RFP.

United States District Court, N.D. California.

March 26, 1990.

Curtis G. Oler, Law Offices of Curtis G. Oler, San Francisco, Cal., for plaintiff.

Deborah Penny Bennett, Deputy County Counsel, Redwood City, Cal., for defendants.

## ORDER

PECKHAM, District Judge.

### I. INTRODUCTION.

This matter comes before the court on defendants' second motion for summary judgment. Plaintiff, a black man, has brought suit against the County of San Mateo ("County") and individual defendants Donati, Frimmersdorf, Fagetti, and McCreadie under 42 U.S.C. § 2000e ("Title VII"), 42 U.S.C. §§ 1981, 1983, and 1985, and the California Fair Employment and Housing Act (California Government Code § 12900 *et seq.*, hereinafter "FEHA"), alleging that Defendants subjected him to racially motivated discrimination and harassment in his employment in the San Mateo County Probation Department. Specifically, plaintiff alleges that he was denied promotions, involuntarily transferred to San Mateo County's Hillcrest Juvenile Hall facility, subjected to significantly higher levels of scrutiny than other employees, required to take excessive amounts of job retraining courses, given

falsely negative performance evaluations, and otherwise subjected to discriminatory working conditions, all on the basis of his race and as retaliation for lodging earlier complaints of race discrimination.

By order dated October 3, 1989, this court granted in part and denied in part defendants' first motion for summary judgment. Specifically, the court granted summary judgment on statute of limitations grounds on that portion of plaintiff's FEHA claim rooted in a 1986 complaint filed with the California Department of Fair Employment and Housing ("DFEH"). We granted summary judgment on the portion of plaintiff's § 1983 claim based on events occurring before January 3, 1988, also on statute of limitations grounds. These rulings served to narrow the scope of these claims factually, but otherwise left the claims intact. The individual defendants' motion for summary judgment on plaintiff's Title VII and FEHA claims was denied, as was the motion by all defendants for summary judgment on the portion of plaintiff's Title VII claim rooted in his 1986 complaint to the Equal Employment Opportunity Commission ("EEOC").

Defendants now move for summary judgment a second time on the following grounds. First, defendants argue that the court should grant summary judgment in their favor on plaintiff's Title VII claim. They advance two separate arguments in favor of this motion. First, defendants allege that the discovery process has produced no evidence of either race-based disparate treatment of plaintiff or disparate impact of Probation Department policies on black employees. Second, defendants also argue that discovery has produced no evidence that the employment decisions forming the basis of plaintiff's complaint were made in retaliation for his prior complaints of race discrimination.

Next, defendants move for summary judgment on plaintiff's claims under 42 U.S.C. §§ 1981, 1983, and 1985, arguing that these claims are precluded by plaintiff's Title VII claim.

Third, defendants move for summary judgment on plaintiff's § 1981 claim on several grounds. Defendants argue first that discovery has produced no evidence that plaintiff was denied his right to make or enforce a contract on the basis of his race, as they contend is required by *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), in order to maintain a § 1981 claim. Also, they argue that the court should find that the statute of limitations for § 1981 claims is one year, requiring that any portion of plaintiff's claim rooted in events occurring more than one year before the filing of this action should be dismissed. Further, defendants assert that plaintiff's § 1981 claim should be dismissed on the grounds that § 1981 affords no remedy for racial discrimination by public actors.

Defendants next move for summary judgment on plaintiff's claim under 42 U.S.C. § 1983, arguing that discovery has produced no evidence of either race discrimination or of an unconstitutional policy or custom.

Alleging that discovery has produced no evidence of a conspiracy to deprive plaintiff of his civil rights, defendants further argue that summary judgment should be granted on his claim under 42 U.S.C. § 1985.

Finally, defendants move for summary judgment on plaintiff's FEHA claim, again on the basis of their allegation that no facts have emerged in discovery showing that plaintiff was discriminated against on the basis of race.

Plaintiff opposes defendants' motion for summary judgment. This matter has been submitted to the court for decision on the papers. Because our order of October 3, 1989, contained a full discussion of the facts of this case, the court will not reiterate the essential facts underlying the claim at this time. Where relevant to determination of the motion before us, however, we will discuss below any new facts which have come to light during the discovery process.

## II. DISCUSSION.

A. *Standard for Granting Summary Judgment.*

Federal Rule of Civil Procedure 56(c) provides for the granting of summary judg-

ment where there is no triable issue of material fact and where the moving party is entitled to summary judgment as a matter of law. The burden of establishing that there is no genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). However, once the moving party has met that burden by presenting evidence which, if uncontradicted, would entitle it to a directed verdict at trial, Federal Rule of Civil Procedure 56(e) shifts to the non-moving party the burden of presenting specific facts showing that such contradiction is possible. *British Airways Board v. Boeing Co.*, 585 F.2d 946, 950–52 (9th Cir. 1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979).

A party opposing summary judgment may not rest upon the mere allegations or denials in its pleadings. Rather, its responses, either by affidavits or otherwise as provided by the rule, must set forth specific facts showing that there is a genuine issue for trial. A mere "scintilla" of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

The question is whether reasonable minds could differ as to the import of the evidence. *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1288 (9th Cir.1987). "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Id.* at 1288. The non-moving party's evidence is to be taken as true and all inferences are to be drawn in the light most favorable to the non-moving party. *Id.* at 1289.

B. *Motion for Summary Judgment on Title VII Claim.*

Defendants contend that plaintiff's Title VII claim should be dismissed because the discovery process has produced no facts to support a Title VII race discrimination claim based on either a disparate treatment or a disparate impact theory. Defendants also argue that discovery has produced no evidence supporting a Title VII claim based on retaliation for plaintiff's prior race discrimination complaints. The court will consider each of these contentions in turn.

i. Disparate Treatment Theory.

■ In arguing that plaintiff has not presented facts to support a disparate treatment theory, defendants rely upon *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335–36, n. 15, 97 S.Ct. 1843, 1854, n. 15, 52 L.Ed.2d 396 (1977). In that case, the Supreme Court noted that proving a violation of Title VII under a disparate treatment theory requires proof of discriminatory motive; proof of discriminatory motive may be either by direct proof or by inference "from the mere fact of differences in treatment." *Id.* At the summary judgment stage of proceedings, proof of disparate treatment sufficient to raise an inference of discriminatory motive requires plaintiff to "adduce facts which, if believed, could generate the inference...." *Foster v. Arcata Associates, Inc.*, 772 F.2d 1453, 1459 (9th Cir. 1985).

Defendants argue that plaintiff has failed to raise a genuine question of material fact regarding the discriminatory motives of the county or of any of the individual defendants, either by direct proof or through inference. In response, plaintiff refers the court to his deposition, a declaration submitted by him to the court, and determinations on prior race discrimination complaints filed by plaintiff with the San Mateo County Civil Service Commission and the EEOC. Having reviewed these portions of the record, the court finds evidence sufficient to raise a genuine question of material fact regarding disparate treatment and discriminatory motive. This evidence is sufficient to allow plaintiff to maintain his Title VII claim against the county and each of the individual defendants.

The court finds significant evidence in the record indicating that plaintiff was treated differently than white employees. In his declaration, plaintiff states under

oath that he was involuntarily transferred to the graveyard shift (11 p.m. to 7 a.m.), when white employees with less seniority were allowed to work the day or swing shifts; he gives the names of these employees. Further, he states that the majority of black employees were assigned to the graveyard shift. (Declaration of William Maddox, p. 3).

Plaintiff's declaration details the unusual level of scrutiny and evaluation he was subjected to, both before and after his involuntary transfer to the Hillcrest facility. Before his transfer, plaintiff notes that, unlike any other employees, he was subjected to intensive monthly performance evaluations. (Declaration of William Maddox, p. 4).

After he and several other black employees testified in support of two black wards in a juvenile court hearing, plaintiff states that defendants Frimmersdorf and Donati and others gave him negative performance evaluations and developed a plan for his termination. Plaintiff's deposition contains quotations from a memorandum by Frimmersdorf, allegedly reviewed and approved by Donati, discussing attempts to terminate plaintiff. (Deposition of William Maddox, Volume I, p. 18). Also in his deposition, plaintiff states that defendant Frimmersdorf commented after the juvenile court hearing "that a subgroup was trying to tear down the camp.... It was known to all the staff that the subgroup was black." (Deposition of William Maddox, Volume I, p. 124).

Plaintiff alleges that his involuntary transfer to Hillcrest was part of the plan to terminate him. He states that defendant Frimmersdorf told him that "he had a man at Hillcrest who would 'get rid of me so fast it would make my head swim.' " (Declaration of William Maddox, p. 6). Plaintiff understood this remark to refer to defendant McCreadie. Defendant Frimmersdorf ordered plaintiff transferred; plaintiff alleges that defendant Fagetti participated in this decision.[1]

According to the San Mateo County Civil Service Commission's findings on plaintiff's 1986 complaint regarding unwarranted performance evaluations, defendant McCreadie told plaintiff that " 'for all intents and purposes he would be considered a newly hired employee and receive the training accorded same—daily assessments with the Group Supervisor III, weekly reviews by this rater, with quarterly Civil Service Reviews.' " (Plaintiff's Exhibit 16). At the time plaintiff was subjected to this treatment, he had been employed by the San Mateo County Probation Department for nearly twenty years. The Civil Service Commission's findings conclude, "Mr. Maddox has been singled out for intense scrutiny and evaluation not required or demanded of others similarly situated." (Id.) In response to a 1986 complaint by plaintiff, the EEOC similarly found that plaintiff was being "more intensely evaluated" than any other similarly situated employee.[2]

The court therefore finds that a genuine question of material fact remains for trial regarding whether plaintiff was disparately treated and whether that treatment stemmed from discriminatory motives. Therefore, we find that summary judgment as to plaintiff's Title VII claim must be DENIED.

ii. Disparate Impact Theory.

■ Defendants next contend that plaintiff has failed to adduce facts in support of

---

1. The court notes that, at one point in his deposition, plaintiff states that he does not believe that defendant Fagetti's participation in this plan stemmed from racist feelings against plaintiff. Deposition of William Maddox, Volume I, p. 129. Nevertheless, since evidence of discriminatory motive may be inferred from the fact of disparate treatment, plaintiff's proffer of evidence regarding defendant Fagetti's participation raises a question of material fact on the motive issue sufficient to allow the claim against Fagetti to withstand summary judgment.

2. Based upon review of the underlying EEOC file on this complaint by their counsel, defendants argue that this EEOC determination is not credible. They dispute the sufficiency of the evidence upon which the EEOC relied in making this determination. Affidavit of Deborah P. Bennett. The credibility of the EEOC determination may be more appropriately challenged if and when plaintiff attempts to introduce it at trial. Plaintiff may rely upon it at the summary judgment stage to aid in raising a question of material fact.

a disparate impact Title VII claim. In order to maintain a Title VII action rooted in a disparate impact theory, plaintiff must show that the County of San Mateo pursued a facially neutral policy which discriminated against black employees in practice and was not justified by any business necessity. *Griggs v. Duke Power*, 401 U.S. 424, 431, 91 S.Ct. 849, 853–54, 28 L.Ed.2d 158, 164 (1971).

Plaintiff does not contest in his opposition papers that the facts proffered to date fail to show County pursuit of a policy having a disparate impact on black employees. Indeed, plaintiff's Title VII claim does not appear to be in any way rooted in a disparate impact theory. Therefore, the court does not find this line of argument relevant and will rule on the motion for summary judgment as to the Title VII claim on other grounds.

### iii. Retaliation Theory.

 Defendants next argue that plaintiff's Title VII claim must fail because discovery has produced no facts to support a theory of negative treatment in retaliation for filing complaints of race discrimination.[3] Plaintiff opposes defendants' motion on this claim, arguing that material facts remain in issue as to whether plaintiff was retaliated against for protesting alleged discriminatory treatment.

 In order to make out a prima facie case of retaliation in violation of Title VII, plaintiff would have to show at trial that he engaged in a protected activity, that he was subsequently subjected to adverse employment action, and that there was a causal link between these two facts. *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir.1982); *Gunther v. County of Washington*, 623 F.2d 1303 (9th Cir.1979), *aff'd*, 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981).

To show the causal link, plaintiff would be required to present at trial evidence sufficient to raise an inference that the protected activity was the likely reason for the adverse action taken against him by defendants. *Cohen*, 686 F.2d at 796. Evidence that defendants were aware that plaintiff engaged in protected activity is a critical factor in drawing this inference. *Id.* The burden would then shift to defendants to articulate some legitimate, non-retaliatory reason for the adverse action. *Id.* If defendants succeeded in doing so, the burden would then shift back to plaintiff to show that the reason given is merely pretextual. *Id.* Applying the standard appropriate to summary judgment to this inquiry, the questions for the court become: 1) whether a genuine question of material fact remains for trial regarding the causal link between plaintiff's protected activity and any adverse action taken by defendants and 2) whether a genuine question of material fact remains regarding whether any potentially non-discriminatory reason articulated by defendants is merely pretextual. Fed.R.Civ.P. 56(c).

Section 704(a) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a), prohibits any discrimination by an employer against an employee "because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge ... under this subchapter." Plaintiff engaged in the following activities qualifying for protection under § 704(a): filing discrimination charges against the County under Title VII in 1980 and 1982; filing discrimination complaints with the EEOC, which were passed on to the DFEH as complaints under FEHA, in 1986 and 1988; filing a complaint with the San Mateo County Civil Service Commission. There is ample evidence in the record raising a question of fact regarding whether defendants were aware of at least some of this protected protest activity. For example, all of the named individual defendants were interviewed by the San Mateo County Civil Service Commission in connection with its investigation of plaintiff's complaint. *See*,

---

**3.** Defendants also argue in the section of their brief discussing retaliation that plaintiff has failed to produce evidence showing race to be the motive underlying defendants' actions towards plaintiff. The court views this issue as identical to that resolved above regarding whether plaintiff was subjected to disparate treatment based on intentional discrimination.

Exhibit 16 to the Declaration of William Maddox.

Plaintiff alleges that defendants took adverse action against him in retaliation for these protected activities; he pleads the following specific instances of adverse action. Plaintiff asserts that defendants Frimmersdorf, McCreadie, and Fagetti at various times gave plaintiff falsely negative performance evaluations.[4] Declaration of William Maddox at ¶¶ 17–18. He asserts that defendant Frimmersdorf, with the approval of defendant Donati, involuntary transferred plaintiff to the Hillcrest facility. *Id.* at ¶ 15. Further, plaintiff provides evidence of what he asserts were unwarranted disciplinary actions taken against him, such as a ten–day suspension implemented by defendant Donati in 1983. *See, e.g.,* Exhibit 7 to Declaration of William Maddox. Also, he asserts that his requests to transfer from the graveyard shift to a more desirable shift were repeatedly denied in retaliation for his complaints.

Defendants offer as a non-discriminatory reason for the negative performance evaluations and disciplinary action plaintiff's alleged incompetence. *See, e.g.,* Affidavit of Don McCreadie at ¶¶ 4–5. In response to plaintiff's charge that he was transferred to Hillcrest in retaliation for his complaints and assigned undesirable duties once there, defendants again offer the explanation of his supervisors' frustration with plaintiff based on his alleged incompetence and the fact that plaintiff "made unfounded complaints of racism."[5] Memorandum in Support of Motion for Summary Judgment at 10.

The court finds that a question of material fact remains for trial regarding the causal link between plaintiff's numerous complaints of race discrimination and the adverse employment actions taken against plaintiff by defendants. We further find that a question of fact remains regarding whether the non-discriminatory reasons proffered by defendants to explain the ad-

verse action were merely pretextual: while defendants assert that plaintiff was an incompetent employee, they present as evidence of the alleged incompetence performance evaluations which plaintiff asserts were discriminatorily motivated. This factual dispute is one for the trier of fact. Further, as noted above, defendants knew of at least some of plaintiff's protected activities.

In sum, we find that plaintiff has presented evidence such that a reasonable jury could draw an inference of retaliatory motive. Accordingly, defendants' motion for summary judgment on plaintiff's claim for retaliation under Title VII must fail and is hereby DENIED.

**C.** *Motions for Summary Judgment on §§ 1981, 1983, and 1985 Claims.*

We next consider defendants' motions for summary judgment on plaintiff's claims for violation of 42 U.S.C. §§ 1981, 1983, and 1985. Defendants argue that they are entitled to summary judgment as a matter of law on these claims because the claims are precluded by plaintiff's suit under Title VII. Summary judgment having been denied on plaintiff's Title VII claim, this line of argument remains relevant. Should we determine that defendants' preclusion arguments are meritorious, consideration of defendants' other arguments in favor of summary judgment on the §§ 1981, 1983, and 1985 claims becomes unnecessary.

**i.** § 1981 Claim.

■ Defendants argue that plaintiff's § 1981 claim should be precluded by his pursuit of a Title VII remedy. As authority for this proposition, defendants cite only to *Sosa v. Hirokoa,* 714 F.Supp. 1100 (E.D. Cal.1989). In that case, the court relied on a Colorado district court's interpretation, affirmed by the Tenth Circuit, of *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), to

---

**4.** The court notes that individual defendants Donati, Fimmersdorf, and Fagetti state in their *affidavits that they did not participate in the* preparation of any of these performance evalua-

tions. The court finds that this is a question of fact more appropriate for resolution at trial.

**5.** This latter assertion comes perilously close to a confession of retaliatory motive.

hold that "when a plaintiff brings a Title VII claim and a § 1981 claim in the same action, the plaintiff is not entitled to remedies beyond those available under Title VII unless an independent basis for the § 1981 claim can be established." 714 F.Supp. at 1105.

■ Going directly to the controlling authority of *Johnson v. Railway Express Agency* itself, we cannot agree that it dictates this holding. In deciding that the filing of a Title VII complaint with the EEOC did not toll the statute of limitations for filing a claim under § 1981, the Supreme Court found that the relief afforded by the two statutes was not entirely coextensive. We believe that it significantly overstates the holding of *Johnson,* however, to infer from this that the two statutes are mutually exclusive. Indeed, the *Johnson* Court wrote,

> Despite Title VII's range and its design as a comprehensive solution for the problem of invidious discrimination in employment, the aggrieved individual clearly is not deprived of other remedies he possesses and is not limited to Title VII in his search for relief. '[T]he legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes.' 421 U.S. at 459, 95 S.Ct. at 1719, *citing Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 48, 94 S.Ct. 1011, 1019–20, 39 L.Ed.2d 147 (1974).

The court finds as a matter of law that plaintiff's pursuit of relief under Title VII does not preclude his maintaining a claim under 42 U.S.C. § 1981. Therefore, defen-

dants' motion for summary judgment on the § 1981 claim on these grounds is DENIED.[6]

ii. § 1983 Claim.

■ Defendants next argue that plaintiff's claim under 42 U.S.C. § 1983 is precluded by his pursuit of a claim under Title VII. The law of this circuit is otherwise. In *Roberts v. College of the Desert,* 870 F.2d 1411 (9th Cir.1988), the issue was squarely decided when the court held, "We agree with the reasoning of those courts that have held that Title VII does not preempt an action under section 1983 for a violation of the fourteenth amendment." 870 F.2d at 1415.[7] Therefore, defendants' motion for summary judgment on the § 1983 claim on preclusion grounds is DENIED.

iii. § 1985 Claim.

■ The Supreme Court in *Great American S. & L. Assn. v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), held that a conspiracy to deprive a plaintiff of rights created by Title VII cannot form the basis for a cause of action under 42 U.S.C. § 1985(c). 442 U.S. at 378, 99 S.Ct. at 2352. In order to make out a § 1985 claim, plaintiff must allege that defendants conspired to deprive him of equal protection of the laws or of equal privileges and immunities under the laws. *Id.* at 372, 99 S.Ct. at 2349, *citing Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d (1971). An allegation that defendants conspired to commit violations of Title VII—i.e., conspired to discriminate against plaintiff in his employment or to retaliate against him for protected activi-

---

6. Had we agreed with the *Sosa* court's interpretation of the holding in *Johnson* and found that pursuit of the Title VII claim did preclude pursuit of the § 1981 claim, we would still have denied summary judgment. Both court in *Sosa* and the Colorado district court opinion he relied upon in *Sosa* found that separate claims could be maintained under § 1981 and Title VII where the plaintiff stated independent bases for the two claims. Plaintiff has stated an independent basis for his § 1981 claim in alleging discriminatory failure to promote him to a different position, which goes to the making of a contract. As discussed below with reference to our consideration of *Patterson v. McLean Credit*

*Union,* 109 S.Ct. 2363, discrimination in the making of a contract lies at the heart of a § 1981 claim.

7. Defendants cite to *Learned v. City of Bellevue,* 860 F.2d 928 (9th Cir.1988), an earlier case in which the court touched upon but did not decide the § 1983 preclusion issue. While the panel in that case indicated that it might have decided the question in favor of preclusion, that statement was dicta only. The court did not actually reach the preclusion issue in making its decision.

ties—is insufficient to make out a § 1985 claim. *Id. See also, Roberts v. College of the Desert,* 870 F.2d at 1415; *Cleghorn v. Herrington,* 813 F.2d 992, 995 (9th Cir. 1987).

Plaintiff's response to defendants' argument focuses on the conspiracy element of § 1985. Plaintiff argues that *Novotny* merely prohibits basing a § 1985 claim on independent instances of employment discrimination prohibited by Title VII. Plaintiff appears to argue, however, that a *conspiracy* to violate Title VII can form the basis of a § 1985 claim. As just indicated, we read *Novotny* differently.

A review of plaintiff's complaint in this action reveals that his claims involve allegations of employment discrimination only. No conspiracy to deprive plaintiff of equal protection of the laws or equal privileges and immunities in the sense required by *Novotny* is alleged in the complaint or apparent from the facts pled in opposition to defendants' motion for summary judgment. We are therefore compelled to find that plaintiff has failed to allege a valid basis for a claim under § 1985. Accordingly, summary judgment on plaintiff's § 1985 claim is hereby GRANTED.[8]

**D.** *Motion for Summary Judgment on § 1981 Claim.*

Defendants next move for summary judgment on plaintiff's § 1981 claim on several grounds, which we will address in the following order. First, they argue that plaintiff's § 1981 claim must fail in light of the requirement announced by the Supreme Court in *Patterson v. McLean Credit Union* that plaintiff show discrimination in the making rather than the enforcement of a contract. Next, they argue that the § 1981 claim must fail because that statute affords no remedy for discrimination by a public actor such as the County. Finally, defendants move for partial summary judgment, arguing that the applicable statute of limitations requires us to limit plaintiff's

§ 1981 claim to events occurring within one year of the filing of this action.

**i. Patterson Argument.**

 Defendants contend that plaintiff's claim fails under the reasoning of *Patterson v. McLean Credit Union.* While declining to overrule *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976), the *Patterson* Court held that only the making and enforcement of a contract and not post-formation racial discrimination are actionable under § 1981. —— U.S. at ——, 109 S.Ct. at 2369–70, 105 L.Ed.2d at 147. Defendants argue that plaintiff has alleged only post-formation discrimination. Without alleging discrimination in contract formation, plaintiff, they contend, cannot satisfy the *Patterson* standard for making out a § 1981 claim.

Plaintiff responds that discriminatory failure to promote is comprehended within *Patterson*'s definition of discrimination in contract formation. This is true where the promotion is such that it effectively amounts to "an opportunity for a new and distinct relation between the employee and the employer." —— U.S. at ——, 109 S.Ct. at 2377, 105 L.Ed.2d at 156. Finding that the question was not really before the Court because the employer did not challenge the cognizability of the employee's promotion claim, the *Patterson* Court declined to elaborate on the meaning of this phrase. *Id.*

Plaintiff contends that the various promotions which he alleges he was discriminatorily denied would have been opportunities for a new and distinct relation with the county. We find that this constitutes a genuine question of material fact for trial of this matter; therefore, defendants' motion for summary judgment based on the reasoning of *Patterson* is hereby DENIED.

**ii. Public Actor Argument.**

 Defendants next contend that plaintiff may not bring an action against a public actor under § 1981. They cite to

---

**8.** The court will not consider further any of defendants' other arguments that they are enti-

tled to summary judgment on the § 1985 claim.

*Jett v. Dallas Independent School District,* —— U.S. ——, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) for the proposition that § 1983 is the exclusive remedy for race discrimination claims brought against public entities.

Defendants misread *Jett.* The Supreme Court in *Jett* held that § 1981 does not create a damages remedy against public actors broader than that given by § 1983. Specifically, the Court held that plaintiffs could not circumvent the limitations on municipal liability made applicable to § 1983 by *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), by bringing a § 1981 claim against a municipality under a *respondeat superior* theory. In order to properly plead a § 1981 claim against a municipality, a plaintiff is now required by *Jett* to allege that "the violation of his 'right to make contracts' protected by § 1981 was caused by a custom or policy within the meaning of *Monell* and subsequent cases." 109 S.Ct. at 2722. *Jett* does not hold, as defendants contend, that § 1981 claims are no longer cognizable against public actors.

Therefore, we find defendants' argument unpersuasive; their motion for summary judgment on the § 1981 claim on these grounds is DENIED.

iii. Statute of Limitations.

■ Defendants next move for partial summary judgment on the § 1981 claim on statute of limitations grounds. They argue that *Goodman v. Lukens Steel,* 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), requires that we apply a one-year statute of limitations to § 1981 claims. *Goodman* held that state statutes of limitations governing personal injury claims apply to claims under § 1981. 482 U.S. at 661–62, 107 S.Ct. at 2621, 96 L.Ed.2d at 582. California has a one-year statute of limitations for personal injury claims. Cal.Civ.Proc. Code § 340(3). Therefore, defendants' motion for partial summary judgment on plaintiffs' § 1981 claim is hereby GRANTED: plaintiff may maintain the § 1981 claim only as to events occurring within one year prior to the filing of this action on January 3, 1989.

E. *Motion for Summary Judgment on § 1983 Claim.*

Defendants make two arguments in support of their motion for summary judgment on plaintiff's § 1983 claim. First, they argue that the claim must fail as against all of the defendants because discovery has produced no factual evidence of discrimination. Based on the factual record discussed in detail in Section III(B)(i) above, the court has determined that a question of fact indeed remains regarding the discrimination question. Therefore, we will not grant summary judgment based on that theory.

■ Defendants next argue that discovery has failed to produce evidence of a discriminatory custom or policy by the County. Defendants argue that the § 1983 claim must fail as against the County, because in the absence of such evidence municipalities cannot be held liable for violation of § 1983 under the reasoning of *Monell v. New York City Dept. of Social Services* and *Pembaur v. Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).

■ *Monell* held that local governments could not be held liable for violation of § 1983 on a *respondeat superior* theory. Rather than basing local government liability on a showing of a violation by a municipal employee, the alleged deprivation of constitutional rights suffered by the plaintiff must result from an unconstitutional custom or policy of the local government itself. 436 U.S. at 690, 98 S.Ct. at 2035–36. *Pembaur* elaborated this holding, stating that the individual official responsible for the deprivation must possess "final authority to establish municipal policy with respect to the action ordered." 475 U.S. at 481, 106 S.Ct. at 1299. Whether an official has final decision-making authority is a question of state law. *Id.* at 483, 106 S.Ct. at 1300.

The County argues that only the County Board of Supervisors has final decision-making authority regarding County mat-

ters, including employment policy. It provides a copy of the County charter as evidence of this fact. Exhibit E to the Declaration of Deborah P. Bennett. Plaintiff does not dispute that the Board of Supervisors is the relevant final decision-maker for purposes of the § 1983 inquiry. The County then provides the declaration of Mary Griffin, President of the Board of Supervisors, stating that the county has no policy or custom of race discrimination, and indeed that the County follows an affirmative action policy in hiring.

Plaintiff argues that the County in effect validated the alleged discrimination, having been put on notice of it by plaintiff's 1986 complaint to the San Mateo County Civil Service Commission and having taken no action to remedy the situation. As a matter of law, however, this argument is insufficient to overcome the County's argument that no custom or policy resulting in discrimination against plaintiff existed. *Pembaur* makes clear that, assuming *arguendo* that the County was on notice by virtue of plaintiff's 1986 complaint,[9] an affirmative decision by the Board of Supervisors would nevertheless be required to establish a custom or policy. In *Pembaur*, the Supreme Court held that municipal liability under § 1983 attaches "where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." 475 U.S. at 483, 106 S.Ct. at 1300. The court sees no evidence in the record of the County participating in any affirmative decision to discriminate. Therefore, finding that the requirements of *Monell* and *Pembaur* are not satisfied, we hereby GRANT summary judgment in favor of the County on plaintiff's claim for violation of § 1983.[10]

**9.** The parties dispute whether the filing and adjudication of the complaint put the County Board of Supervisors on notice of the alleged employment discrimination. The County asserts that the Board of Supervisors lacked actual knowledge of the complaint. *See,* Declaration of Mary Griffin at ¶ 6.

**10.** This ruling applies only to the County. Plaintiff may still maintain claims for violation

### F. *Motion for Summary Judgment on FEHA Claim.*

Finally, defendants move for summary judgment on plaintiff's claim for violation of the California Fair Employment and Housing Act ("FEHA"), California Government Code § 12900 *et seq.*, arguing that discovery has produced no evidence of employment discrimination.[11] Because we found, as discussed in detail in section II(B)(i), that there is a question of fact regarding race discrimination, summary judgment on the FEHA claim is hereby DENIED.

### III. CONCLUSION.

For the foregoing reasons, the court has ruled as follows on defendants' motion for summary judgment on plaintiff's claims:

The motion for summary judgment on plaintiff's Title VII claim is DENIED.

The motion for summary judgment on plaintiff's § 1981 claim is DENIED. However, the motion for partial summary judgment on statute of limitations grounds is GRANTED. Plaintiff may maintain the § 1981 claim only as to events occurring within one year prior to the filing of this action on January 3, 1989.

The motion for summary judgment on plaintiff's § 1983 claim is DENIED as to the individual named defendants but GRANTED as to the County of San Mateo.

The motion for summary judgment on plaintiff's § 1985 claim is GRANTED.

The motion for summary judgment on plaintiff's FEHA claim is DENIED.

IT IS SO ORDERED.

of § 1983 against the individual named defendants.

**11.** In our order of October 3, 1989, we dismissed that portion of plaintiff's FEHA claim rooted in his 1986 DFEH complaint, finding that it was barred by the applicable statute of limitations.