In re GARY BREW ENTERPRISES LTD., d/b/a National City Jeep Eagle, Debtor.

Donald J. THOMAS, Plaintiff,

v.

Adam ADAMS, Jr., Gary W. Brugh, and Joyce Brugh, and Gary Brew Ent. Ltd., Defendants.

Bankruptcy No. 96–12643–A7.

Adv. No. 96–90279.

United States Bankruptcy Court, S.D. California.

July 22, 1996.

Donald J. Thomas, San Diego, California, pro se.

Teryl Murabayashi, Christopher Celentino, Luce, Forward, Hamilton & Scripps, Los Angeles, California, for Chapter 7 Trustee.

## ORDER

JOHN L. PETERSON, Chief Judge, Sitting by Designation.

Pending in this adversary proceeding is the Plaintiff's motion to remand this action to the U.S. District Court for the Southern District of California, after the action was removed to this Court by the Chapter 7 Trustee of the Defendant Gary Brew Ent. Ltd., Debtor.[1] Gary W. Brugh and Joyce Brugh are also Chapter 7 Debtors in Bankruptcy Case 95–00538–B7. An adversary proceeding by Thomas against Debtors Brugh is pending in case 96–09302–B7 seeking a determination of non-dischargeability under 11 U.S.C. § 523(a)(6). Both adversary proceedings have been assigned to this Court. The basis for the non-dischargeability complaint in cause 96–90302 is based on the same complaint and circumstances in this pending adversary proceeding, which is the alleged racial discrimination in employment under 42 U.S.C. § 1981 (42 U.S.C. § 2000(e)). It is also conceded that the Plaintiff filed Proofs of Claim in each Chapter 7 case seeking unliquidated damages of $100,000 against each Debtor based on the racial discrimination allegations.

Procedurally, the Plaintiff initially filed the racial discrimination complaint in the U.S. Bankruptcy Court in adversary proceeding

---

**1.** 28 U.S.C. § 1478 provides for removal to the bankruptcy court as follows:

(a) A party may remove any claim or cause of action in a civil action, other than a proceeding before the United States Tax Court or a civil action by a Government unit to enforce such governmental unit's police or regulatory power, to the bankruptcy court for the district where such civil action is pending, if the bankruptcy courts have jurisdiction over such claim or cause of action.

(b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order under this subsection remanding a claim or cause of action, or a decision not so remanding, is not reviewable by appeal or otherwise.

no. 93–90264. That action was dismissed by Order of June 28, 1994, due to lack of prosecution. Plaintiff then renewed the action in the United States District Court on June 24, 1995, and filed the Second amended complaint on February 20, 1996. On February 15, 1996, the Chapter 7 Trustee filed objection to the Thomas Proof of Claim. On May 2, 1996, the Chapter 7 Trustee removed the District Court action to this Court. On May 6, 1996, the Trustee filed an answer to complaint. Plaintiff, on June 3, 1996, filed the pending motion to remand to District Court. This Court held a telephone conference hearing on the motion on July 11, 1996, after briefs were filed by the Plaintiff and the Chapter 7 Trustee. Brughs have not appeared in support or opposition to the remand motion. Further, on August 29, 1995, Defendant Adams filed a motion to dismiss the complaint under F.R.Civ.P. 12(b)(6) on the basis the action against Adams is barred by the applicable statute of limitations. Both parties have filed briefs on the Rule 12(b)(6) motion, which is still pending. Adams, however, filed an answer to the complaint on April 19, 1996, alleging, in part, an affirmative defense of the statute of limitations. In addition, there is a separate ground argued by Adams for dismissal that the complaint fails to allege that the plaintiff sought an administrative right to sue letter against Adams as required by 42 U.S.C. § 2000e–5(f)(1), which Adams contends must be affirmatively plead in the complaint.

### MOTION TO REMAND

*In re S.G. Phillips Constructors, Inc.,* 45 F.3d 702, 704–705 (2nd Cir.1995) states:

> The Bankruptcy Code provides a non-exclusive list of matters that Congress considered to be within the bankruptcy court's core jurisdiction, including the "allowance or disallowance of claims against the estate." *Id.* § 157(b)(2)(B). In a case closely analogous to this case, we held that when a creditor files a proof of claim, the bankruptcy court has core jurisdiction to determine that claim, even if it was a prepetition contract claim arising under state law. *In re Manville,* 896 F.2d at 1396–97 [896 F.2d 1384 (2nd Cir.1990)].

Phillips also analyzed whether an exception to the above general jurisdictional rule applied, one of which exceptions is based on *In re Castlerock,* 781 F.2d 159 (9th Cir.1986). *Castlerock* concedes that where a creditor files a proof of claim voluntarily, the matter on resolution of that claim is a core proceeding. *Id.* at 162. Where the creditor has not voluntarily filed a proof of claim, but has taken other "defensive" action in the case to protect its interests, *Castlerock* holds that such "defensive" maneuvering does not constitute voluntary appearance consenting to core jurisdiction. *Id.* at 163; *see, In re BKW Systems,* 66 B.R. 546, 548 (Bankr.D.N.H.1986)(*Castlerock* involved a unique situation in which the creditor was not given an opportunity to freely elect whether or not to assert a claim in the bankruptcy proceeding).

In the case *sub judice,* it is clear the Plaintiff not only freely and voluntarily filed a Proof of Claim in each Chapter 7 case, but the Plaintiff also took further affirmative action in filing the racial discrimination complaint in bankruptcy court as an adversary proceeding against the Debtor. In so doing, the Plaintiff necessarily became a party to the Court's core jurisdiction. *Langenkamp v. Culp,* 498 U.S. 42, 44, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990).

The above general rule would ordinarily resolve the matter against the Plaintiff's motion to remand. However, in 1984 the Congress adopted section 157(b)(5), which provides:

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

Moreover, § 157(b)(2)(B) provides that core proceedings include the allowance or disallowance of claims against the estate "but not the liquidation or estimation of contingent or unliquidated personal injury torts or wrongful death claims against the estate for purposes of distribution in a case under title 11." Section 157(b)(4) then provides that non-core proceedings under § 157(b)(2)(B), i.e., per-

sonal injury tort claims, "shall not be subject to mandatory abstention provisions of section 1334(c)(2)." [2]

The Chapter 7 Trustee, on this issue under § 157(b)(2)(B), relies on *In re Atron, Inc. of Michigan,* 172 B.R. 541 (Bankr.W.D.Mich. 1994), holding section 1981 racial discrimination claims are not personal injury tort claims as that term is used in § 157. *Atron* relies on *In re Interco, Inc.,* 135 B.R. 359 (Bankr.E.D.Mo.1991), and *In re Cohen,* 107 B.R. 453 (Bankr.S.D.N.Y.1989), while recognizing *In re Boyer,* 93 B.R. 313 (Bankr. N.D.N.Y.1988) and *In re Smith,* 95 B.R. 286 (Bankr.N.D.N.Y.1988) held civil rights actions are personal injury tort actions within the meaning of § 157(b)(2)(B) and (b)(5).[3] *Atron* explains:

> We believe, however, that drawing the distinction as did *Interco, Cohen,* [In re] *Vinci* [108 B.R. 439], and *Bertholet* [v. Harman, 126 B.R. 413] between the "traditional, plain meaning sense" of the words "personal injury" and the emotional distress and humiliation of nontraditional personal injury tort claims yields the logical, preferable result.

*Atron,* 172 B.R. at 545. The *Atron* court looked to the complaint to determine the nature of the relief sought, noting an absence of allegation that "humiliation and emotional distress" were so severe that they rose to the level of a personal injury tort.

After analysis, however, I hold the *Atron* decision does not comport with the U.S. Supreme Court decisions dealing with civil rights actions. Two seminal decisions, *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) and *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 107 S.Ct. 2617, 96

L.Ed.2d 572 (1987) give keen insight as to the nature of the litigation under §§ 1981 and 1983. *Wilson,* 471 U.S. at 276–278, 105 S.Ct. at 1947–1948, holds:

> After exhaustively reviewing the different ways that § 1983 claims have been characterized in every Federal Circuit, the Court of Appeals concluded that the tort action for the recovery of damages for personal injuries is the best alternative available. [*Garcia v. Wilson,*] 731 F.2d [640], at 650–651. We agree that this choice is supported by the nature of the § 1983 remedy, and by the federal interest in ensuring that the borrowed period of limitations not discriminate against the federal civil rights remedy.

\*   \*   \*   \*   \*   \*

The atrocities that concerned Congress in 1871 plainly sounded in tort. Relying on this premise we have found tort analogies compelling in establishing the elements of a cause of action under § 1983, *Monroe v. Pape,* 365 U.S. [167], at 186 [81 S.Ct. 473, 483–484, 5 L.Ed.2d 492 (1961)], and in identifying the immunities available to defendants, *Briscoe v. LaHue,* 460 U.S. [325], at 330 [103 S.Ct. 1108, 1112–1113, 75 L.Ed.2d 96 (1983)]; *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 258 [101 S.Ct. 2748, 2755, 69 L.Ed.2d 616] (1981); *Pierson v. Ray,* 386 U.S. 547, 553–557 [87 S.Ct. 1213, 1217–1219, 18 L.Ed.2d 288] (1967). As we have noted, however, the § 1983 remedy encompasses a broad range of potential tort analogies, from injuries to property to infringements of individual liberty.

Among the potential analogies, Congress unquestionably would have considered the

---

**2.** Plaintiff seeks remand under 28 U.S.C. § 1452(b). The appropriate section, however, is 28 U.S.C. § 1478(b). There is no motion to abstain pending under § 1334(c)(2). 1 Collier on Bankruptcy ¶ 3.01, pp. 3–86 (15th ed.) states that by excepting suits involving personal injury tort actions from mandatory abstention under § 1334(c)(2), "Congress intended that they be tried by the district court, at least if the only reason is that ground for mandatory abstention exists. On the hand, because there is no exception from discretionary abstention provisions of section 1334(c)(1), the courts have concluded that the statute has not removed their discretion to abstain from trying PITWD [personal injury

tort and wrongful death] claims under proper circumstances." *See In re White Motor Credit,* 761 F.2d 270 (6th Cir.1985) and *In re S.G. Phillips Constructors, Inc.,* supra at 708, holding "that the abstention provisions implicate the question whether the bankruptcy court should exercise jurisdiction, not whether the court has jurisdiction in the first place."

**3.** *Colliers,* supra at 3–87 appropriately notes "[T]he sections dealing with personal injury tort and wrongful death claims have been the subject of some confusing judicial interpretations."

remedies established in the Civil Rights Act to be more analogous to tort claims for personal injury than, for example, to claims for damages to property or breach of contract. The unifying theme of the Civil Rights Action of 1871 is reflected in the language of the Fourteenth Amendment that unequivocally recognizes the equal status of every *"person"* subject to the jurisdiction of any of the several States. The Constitution's command is that all *"persons"* shall be accorded the full privileges of citizenship; no *person* shall be deprived of life, liberty, or property without due process of law or be denied the equal protection of the laws. A violation of that command is an injury to the individual rights of the person.

Relying on the language of the statute, the Court of Appeals for the Fourth Circuit has succinctly explained why this analogy is persuasive:

> "In essence, § 1983 creates a cause of action where there has been injury, under color of state law, to the person or to the constitutional or federal statutory rights which emanate from or are guaranteed to the person. In the broad sense, every cause of action under § 1983 which is well-founded results from *personal injuries.*" *Almond v. Kent,* 459 F.2d 200, 204 (1972).

Had the 42d Congress expressly focused on the issue decided today, we believe it would have characterized § 1983 as conferring a general remedy for injuries to personal rights. *Id.* at 276–278, 105 S.Ct. at 1947–1948.

*Goodman,* 482 U.S. at 660–662, 107 S.Ct. at 2620–2622, interpreting § 1981, adopts the same theme:

> In *Wilson,* the reach of which is at issue in this case, there were three holdings: for the purpose of characterizing a claim asserted under § 1983, federal law, rather than state law, is controlling; a single state statute of limitations should be selected to govern all § 1983 suits; and because claims under § 1983 are in essence claims for personal injury, the state statute applicable to such claims should be borrowed. Petitioners in No. 85–1626 (hereafter peti-

tioners), agree with the Court of Appeals that the first two *Wilson* holdings apply in § 1981 cases, but insist that the third does not. Their submission is that § 1981 deals primarily with economic rights, more specifically the execution and enforcement of contracts, and that the appropriate limitations period to borrow is the one applicable to suits for interference with contractual rights, which in Pennsylvania was six years.

> The Court of Appeals properly rejected this submission. Section 1981 has a much broader focus than contractual rights. The section speaks not only of personal rights to contract, but personal rights to sue, to testify, and to equal rights under all laws for the security of person and property; and all persons are to be subject to like punishments, taxes, and burdens of every kind. Section 1981 of the present Code was § 1977 of the Revised Statutes of 1874. Its heading was and is "Equal rights under the law" and is contained in a chapter entitled "Civil Rights." Insofar as it deals with contracts, it declares the personal right to make and enforce contracts, a right, as the section has been construed, that may not be interfered with on racial grounds. The provision asserts, in effect, that competence and capacity to contract shall not depend upon race. It is thus part of a federal law barring racial discrimination, which, as the Court of Appeals said, is a fundamental injury to the individual rights of a person. *Wilson*'s characterization of § 1983 claims is thus equally appropriate here, particularly since § 1983 would reach state action that encroaches on the rights protected by § 1981. That § 1981 has far-reaching economic consequences does not change this conclusion, since such impact flows from guaranteeing the personal right to engage in economically significant activity free from racially discriminatory interference. The Court of Appeals was correct in selecting the Pennsylvania 2–year limitations period governing personal injury actions.

The explicit holdings of *Wilson* and *Goodman* govern the applicable state statutes of limitations. That limitations statute is one

borrowed for personal injury tort actions. Indeed, in this case, Defendant Adams appropriately insists the California one-year statute of limitations on personal injuries applies to this action. *Maddox v. County of San Mateo,* 746 F.Supp. 947, 956 (N.D.Cal. 1990); California Code of Civil Procedure § 340(3).

The use of the term "personal injury tort" action in § 157(b)(2)(B) is the same personal injury tort involved in civil rights actions. This Court, to be consistent with *Wilson* and *Goodman,* concludes that the use of the term "personal injury tort" in § 157 is the same as applied in civil rights litigation on the use of the appropriate state statute of limitations. It simply defies common sense to hold otherwise. It would be a strange anomaly to adopt the personal injury tort statute of limitations for civil rights actions and then hold such term under § 157(b)(2)(B) means something altogether different when non-core jurisdiction is at issue. I therefore reject the rationale of *Atron* and hold the gravamen of the Plaintiff's Second Amended Complaint sounds in tort under 28 U.S.C. § 1981.

Section 157(b)(3) provides:

> The bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11. A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by state law.

There is no consent by the Plaintiff to hear this matter in this Court. *See,* § 157(c)(2). The filing of the Proof of Claim cannot be tantamount to consent where Congress has explicitly restricted this Court's jurisdiction in § 157(b)(2)(B) and 5. The matter must be tried in district court. *Germain v. Connecticut Nat. Bank,* 988 F.2d 1323, 1327 (2nd Cir.1993) states:

> We agree that the filing of a proof of claim is a *necessary* condition—the claims—allowance process can hardly begin before a claim is made—however, it is not a *sufficient* condition. For instance, 28 U.S.C. § 157(b)(5) requires bankruptcy litigation

to try any personal injury or wrongful death action in the district court.

*Atron* does not differ with this conclusion. If *Atron* had found the civil rights action was a personal injury tort case, then the bankruptcy court would have had to accede to the jurisdiction of the district court to try the case.

By reason of this holding, the Defendant's removal of this action to this bankruptcy court was improvident under 28 U.S.C. § 1478(a) as the bankruptcy court has no jurisdiction over this non-core proceeding under § 157(b)(2)(B). This cause must be tried in District Court, notwithstanding the filing of the Proofs of Claim by the Plaintiff.

IT IS ORDERED the Plaintiff's Motion for Remand is granted and this case is remanded to the United States District Court for the Southern District of California for all further proceedings.