927 F.2d 605
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Franklin K. PHILLIPS, Plaintiff-Appellant,
v.
PEPSI-COLA GENERAL BOTTLERS, INC.; Robert K. Poduch;
Thomas C. Barry; Mary Lou Walker, Defendants-Appellees.
 No. 90-5603.
 United States Court of Appeals, Sixth Circuit.
 March 5, 1991.
 
 On Appeal from the United States District Court for the Western District of Kentucky, 88-00124, Ballautine J. C.J.
 W.D.Ky.
 AFFIRMED.
 Before MILBURN and RALPH B. GUY, Jr., Circuit Judges; and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff, Franklin K. Phillips, appeals from the district court's grant of summary judgment in favor of his former employer, defendant Pepsi-Cola General Bottlers, Inc. (Pepsi); Pepsi employees Robert K. Poduch and Thomas Barry; and, plaintiff's former wife, Mary Lou Walker. Plaintiff brought suit against defendants for violating the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e et seq.; violating Kentucky common law against retaliatory discharge; and defamation.
 
 
 2
 Plaintiff argues that the district court erred when it granted summary judgment because he raised genuine issues of material fact on all claims. We find plaintiff's claims without merit and affirm the district court's grant of summary judgment in favor of the defendants.
 
 
 3
 Plaintiff filed a charge with the EEOC and then proceeded to file the current action. Although originally filed in state court, defendants removed it to federal court. With regard to all of plaintiff's claims, except the claim related to the Office of Federal Contract Compliance Programs (OFCCP) agreement, the district court granted defendants' motion for summary judgment on October 19, 1989. After reviewing the conciliation agreement and accompanying memoranda, on April 4, 1990, the district court granted defendants' motion for summary judgment on the OFCCP issue as well.
 
 I. Title VII Claim
 
 4
 Phillips was employed as a human resources manager for Pepsi from May 3, 1982, until he was terminated on September 25, 1987. In this position, Phillips was responsible for ensuring Pepsi's compliance with various federal and state employment laws, including Title VII.
 
 
 5
 Phillips' Title VII claim arises from what he describes as ill-fated attempts to get Pepsi to hire blacks into executive secretarial positions and women into Pepsi's route sales force. Plaintiff alleges that a Pepsi executive, Maynard Nehring, uttered a racial epithet in response to plaintiff's suggestion, indicating that Nehring was hostile to employing blacks as executive secretaries. Plaintiff states that "[a]t the time of his discharge[,] of the fifteen employees working for the executives in the executive offices, there were no blacks." This alleged incident occurred shortly after Phillips was hired by Pepsi. With respect to Phillips' supposed efforts to hire women into the route salesforce, Phillips maintains that his supervisors "would not permit [him] to hire women into this position and many confrontations took place continuing until immediately before [his] discharge." (Brief at 15).
 
 
 6
 This court reviews a district court's grant of summary judgment de novo. Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir.1987). We note, however, that "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 249-50 (1986) (citations omitted).
 
 
 7
 A claim for retaliatory discharge can be sustained only if the plaintiff was "engaged in an activity protected by Title VII." Wrenn v. Gould, 808 F.2d 493, 500 (6th Cir.1987) (quoting Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir.1982)). Title 42 U.S.C. Sec. 2000e-3(a) "prohibits discrimination or retaliation against an employee because the employee 'has opposed any practice made an unlawful employment practice by [Title VII].' "[1] Holden v. Owens-Illinois, Inc., 793 F.2d 745, 748 (6th Cir.), cert. denied, 479 U.S. 1008 (1986). This provision is commonly called the opposition clause. Id. Plaintiff maintains that his attempts to increase the representation of minorities and women in certain positions at Pepsi falls within the ambit of protected conduct under the opposition clause. We disagree. We have held that "[s]ince Title VII does not require the adoption of affirmative action programs, to the extent that plaintiff sought to implement an affirmative action plan ... plaintiff was not opposing a practice that violated Title VII." Id. at 749. There is no indication here that plaintiff's suggestions were, in any way, a response to discriminatory policies at Pepsi.[2]
 
 II. WRONGFUL DISCHARGE CLAIM
 
 8
 Phillips' wrongful discharge claim stems from several alleged incidents that took place prior to his termination by Pepsi. Phillips alleges that he refused to falsify two workers' compensation claims, one filed by David Nehring, the son of a Pepsi executive; and another claim filed by defendant Poduch, a senior vice president of Pepsi and general manager of Pepsi's Louisville division.
 
 
 9
 David Nehring claimed to have injured his back while working at Pepsi. Phillips maintains that Nehring actually injured his back while working for another company. As a result, plaintiff did not submit a claim to Pepsi's insurance company. However, plaintiff's supervisor, based on a personal recollection of Nehring's injury, submitted a form to the insurance company in order to obtain a medical evaluation of the injury to determine Pepsi's liability, if any. The insurance company subsequently informed Pepsi that Nehring's injury was "not a reinjury or a reoccurrence [sic] of the injury he sustained at Pepsi." (App. at 83). Phillips admitted in a deposition that he was not threatened with adverse action as a result of his refusal to file Nehring's claim. (App. at 288).
 
 
 10
 In February of 1984, Poduch reinjured a hernia he had originally developed in 1976, but he decided not to have surgery until February of 1986. Due to the length of time that elapsed between Poduch's reinjury and when he decided to obtain medical care, there was some doubt as to whether the insurance company would pay Poduch's claim. The insurance company ultimately decided to pay the claim because Pepsi, the employer, knew of Poduch's injury within the statutorily required time. Phillips admits that he was not threatened as a result of his actions on the Poduch claim. (App. at 282-83).
 
 
 11
 Generally, at-will employees like the plaintiff can be discharged for any reason or no reason at all. Firestone Textile Co. v. Meadows, 666 S.W.2d 730, 731 (Ky.1983). In Firestone, the Kentucky Supreme Court recognized an exception to this general rule, i.e., when the plaintiff's discharge " 'is contrary to a fundamental and well-defined public policy as evidenced by ... a constitutional or statutory provision.' " Id. (quoting Brockmeyer v. Dunn & Bradstreet, 335 N.W.2d 834, 835 (Wis.1983). Thus, to support a claim of unlawful discharge, the employee must establish that the discharge was a result of his exercise of a constitutionally protected right or a right implicit in a statute.
 
 
 12
 An example of a colorable claim of wrongful discharge is " 'where the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment.' " Grzyb v. Evans, 700 S.W.2d 399, 402 (Ky.1985) (quoting Suchodolski v. Michigan Consol. Gas Co., 316 N.W.2d 710, 711-12 (Mich.1982)). Plaintiff makes such an assertion. He claims he was required to falsify two workers' compensation forms. Although plaintiff makes several conclusory statements connecting the alleged incidents to his discharge, plaintiff provides no further probative evidence. Plaintiff testified that neither Barry, comptroller of Pepsi's Louisville division, nor Poduch threatened plaintiff with termination if he failed to submit either Poduch's or Nehring's workers' compensation claim.[3] (App. at 288). Also, the alleged incident related to Nehring's workers' compensation form took place nearly two and one-half years before plaintiff was fired.[4]
 
 III. DEFAMATION CLAIM
 
 13
 Plaintiff's defamation claim is based on statements allegedly made by the defendants regarding the circumstances of his discharge from Pepsi, i.e., that he was a poor performer and that he was discharged for harassing a fellow Pepsi employee, his former wife. The following outlines the circumstances of plaintiff's relationship with his wife and its impact on the workplace.
 
 
 14
 In 1984, Phillips married another Pepsi employee, defendant Mary Lou Walker, who was the secretary to defendant Poduch. After a tumultuous three-year marriage, the plaintiff and Walker were divorced. During their separation and after their divorce, both the plaintiff and Walker continued to work for Pepsi.
 
 
 15
 In the summer of 1987, plaintiff passed several notes to Walker while she was at work, and he confronted her on numerous occasions. The notes discussed plaintiff's various psychological and physical problems, his desire to reunite with defendant Walker, and his physical abuse of her during their marriage. In July of 1987, defendant Barry was made aware of plaintiff's behavior toward his former wife. In response to the notes referring to plaintiff's plethora of problems, Barry consulted with the company physician and Phillips subsequently was given a leave of absence for several weeks.[5] Upon plaintiff's return, however, he again began to send notes to Walker.[6]
 
 
 16
 Pepsi claims it based its decision to terminate plaintiff on plaintiff's continued harassment of defendant Walker. Indeed, before the plaintiff was fired, he had heard rumors that he was going to be fired because of his behavior toward Walker. (App. at 207). After Pepsi fired the plaintiff, he applied for unemployment benefits. Pepsi notified Kentucky's Division of Unemployment Insurance that the plaintiff was discharged as a result of his abusive behavior toward his former wife while on company time and on company premises.
 
 
 17
 On appeal, plaintiff argues that defendants Pepsi, Barry, Poduch, and Walker made defamatory statements indicating that the plaintiff had harassed and abused defendant Walker. However, plaintiff himself admits to the unsubstantiated nature of his claim: "Everywhere discovery took us we came up blank...." (Pl. Brief at 19-20).
 
 
 18
 Plaintiff takes issue with defendant Pepsi's response to both Kentucky's Division of Unemployment and the EEOC that plaintiff was fired as a result of his abusive behavior toward his wife. The district court held that these communications were immune because they involved a "matter incorporated in a filing, in a judicial proceeding...." (App. at 79). Plaintiff's brief fails to articulate any reason as to why the district court's conclusion on this issue is incorrect. (Pl. Brief at 25-26).
 
 
 19
 Phillips attempts to demonstrate the false nature of the rumors at Pepsi that he had abused his wife. To support his position, Phillips relates testimony in which other people indicate that they have heard the rumors about his harassment of defendant Walker. Plant-wide rumors, however, fail to provide a sufficient nexus between the particular defendants and the allegedly defamatory statements sufficient to sustain a claim of defamation.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 42 U.S.C. Sec. 2000e-3(a) provides that "[i]t shall be unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice...."
 
 
 [2]
 Plaintiff also claims that he was discharged as a result of his efforts to ensure compliance with a conciliation agreement between defendant and the OFCCP. The conciliation agreement enumerated deficiencies in Pepsi's performance with respect to various federal employment laws and specified remedies agreed to by Pepsi. As part of the agreement, OFCCP stated it would notify Pepsi in writing if there were any problems. Plaintiff did not provide the district court with any evidence indicating Pepsi failed to comply with the OFCCP agreement, except that Pepsi had failed to retain job applications for a sufficient period of time. (App. at 86)
 Plaintiff's claim about the OFCCP agreement can also be resolved under an "opposition clause" analysis. Since Pepsi had a remedial plan in effect, which was approved by OFCCP, plaintiff's conduct with regard to the agreement did not fall within section 2000e-(3)'s protection. Pepsi was not violating Title VII.
 
 
 [3]
 The following testimony demonstrates the conflicting nature of plaintiff's recounting of events:
 Q. Okay. You said Mr. Barry told you you would be fired if you did not change dates. Did he tell you to change the dates?
 A. No.
 Q. He did not tell you to change the dates?
 A. No, No.
 Q. But he told you you would be fired if you did not?
 A. That's the way I remember the conversation.
 Q. Did he say he would fire you?
 A. No.
 Q. Did he say who would fire you?
 A. No.
 Q. Did he say Mr. Poduch would fire you?
 A. No.
 (App. at 282-83).
 
 
 [4]
 Phillips also claims that he was discharged in retaliation for his opposition to a new soft drink distribution system. Plaintiff allegedly vehemently disagreed with defendant Poduch about whether certain employees should be exempt from payment for overtime for the purposes of the Fair Labor Standards Act (FLSA), 29 U.S.C. Sec. 201 et seq. Plaintiff argues that he was merely attempting to achieve compliance with the FLSA
 Plaintiff's claim that he was fired due to his attempts to point out potential FLSA implications of Pepsi's new distribution plan is equally without merit. We agree with the district court that there is "no implicit statutory right to protection from discharge of an at-will employee for taking a position contrary to that of his superiors, in the absence of any supported allegation of unlawful conduct." (App. at 76). Phillips claims that several individuals witnessed his disagreement with Poduch about the labor implications of the new soft drink distribution system. Phillips offers, however, only his own uncorroborated testimony to support his allegation that he was fired because he attempted to achieve compliance with FLSA.
 
 
 [5]
 During his leave of absence, Phillips was evaluated by a psychiatrist whose initial evaluation of Phillips included the following:
 Recently he has had some suicidal thoughts and ... some serious homicidal thoughts. He thought about killing his mother in law and he says this is not meant to be a joke, but is real.... He said he also thought about killing his boss and her counselor. He thought about a mass murder with all of them, excluding his wife interestingly enough, and then killing himself....
 (App. at 65).
 
 
 [6]
 The notes refer to Phillips' mental problems and past physical abuse of her, while continually urging her to return to him. The following excerpts illustrate the desperate and unrelenting nature of Phillips' notes to Walker, even after receiving psychological help:
 I realize you may be afraid of me and that you have physical and mental pain. You will not return to me but you could at least see the medical evidence that the person who hurt you was not me. I can't believe that you are the type of person who would think I'm bad or evil because I had a mental problem.
 (App. at 36).
 I'm sorry to keep handing you these, but as you will not talk to me there is nothing else I can do. I've known all along you might use these letters to hurt me but if there is one chance in a thousand it's worth it....
 * * *
 ... Babe if you don't care that I was sick and not able to control what was happening just sit down with me and say so. We all have different strengths and weaknesses.... The sick and well side of me almost killed each other over you ...
 * * *
 Babe, hurting me will not make me stop loving you or trying to contact or talk to you. All it does is hurt....
 (App.at 41, 44, 45).
 I'm trying to stay away from you and not cause you any problem but the pain is almost unbearable and its getting worse. The more people I see the more I miss you. This was ment [sic] to be just a few lines but there is always so much to say....
 (App. 47).