992 F.2d 1220
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Debi REYNOLDS, Plaintiff-Appellant,
v.
STATE OF ARIZONA, et al, Defendant-Appellee.
 No. 91-16189.
 United States Court of Appeals, Ninth Circuit.
 April 28, 1993.
 
 Before SNEED, ALARCON and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 In this Title VII action alleging sex discrimination, Debi Reynolds appeals from the district court's grant of summary judgment in favor of the state of Arizona and several employees of the Arizona Department of Public Safety ("DPS"). We affirm in part and reverse and remand in part.
 
 
 3
 * FACTS
 
 
 4
 Reynolds began working for DPS in 1981 and was a patrol officer from 1982 until January 7, 1986, when she resigned her position. Reynolds resigned because her infant daughter suffered from an illness that required her to be breast-fed, and Reynolds was unable to obtain a transfer to a position within DPS that would have accommodated this need. On October 8, 1986, Reynolds sought to be reinstated to her position as a patrol officer.
 
 
 5
 In January 1987, DPS informed Reynolds that her re-employment was contingent on successful completion of a background investigation, polygraph examination, and psychological and medical evaluations. Due to a hiring freeze, however, the evaluation process was delayed until April 1987. In June 1987, DPS denied Reynolds's request for reinstatement on the ground that she had received an unacceptable score on her psychological evaluation.
 
 
 6
 On October 28, 1987, Reynolds filed a complaint with the Arizona Civil Rights Division in which she alleged that DPS refused to rehire her because of her sex, and in retaliation for her previous complaints to DPS personnel that her need to breast-feed her daughter had not been adequately accommodated. The state agency rejected Reynolds's complaint; she then filed this Title VII action. The district court granted the defendants' motion for summary judgment, and Reynolds appealed.
 
 II
 DISCUSSION
 
 7
 We review de novo the district court's grant of summary judgment. Yartzoff v. Thomas, 809 F.2d 1371, 1373 (9th Cir.1987). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether any genuine issue of material fact remains for trial and whether the moving party is entitled to judgment as a matter of law. Id.; Fed.R.Civ.P. 56(c).
 
 A. Disparate Treatment
 
 8
 Reynolds contends that DPS treated her application for re-employment differently from other such applications and refused to rehire her because she is female. Specifically, Reynolds argues that (1) her background investigation improperly focused on her job performance and was more extensive than is normally required for re-employment applicants; and (2) the information gathered during this background investigation was improperly used in her psychological evaluation and biased its result. We conclude that a genuine issue of material fact precludes summary judgment on this claim.
 
 
 9
 In a sex discrimination action under Title VII, the plaintiff bears the initial burden of establishing a prima facie case of disparate treatment by introducing evidence that gives rise to an inference of unlawful discrimination based on sex. 42 U.S.C. § 2000e-2(a)(1); Sischo-Nownejad v. Merced Community College Dist., 934 F.2d 1104, 1109 (9th Cir.1991). "The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged action." Id. If the employer satisfies this burden, then the plaintiff must prove that the articulated reason is a pretext. Id. "Disparate treatment involves intentional discrimination." Id. Because "the question of an employer's intent to discriminate is a pure question of fact[,] [w]e require very little evidence to survive summary judgment[.]" Id. at 1111 (quotations omitted).
 
 
 10
 During its evaluation of Reynolds's application for reinstatement, the DPS Internal Affairs Unit interviewed fourteen of her former co-workers and supervisors, eleven of whom recommended that Reynolds not be rehired as a patrol officer.[1] The reasons given by the officers to support this recommendation included: (1) Reynolds was a poor backup and responded too slowly to calls; (2) she lacked common sense; and (3) she was often on sick leave and had knee trouble.
 
 
 11
 The information gathered by the Internal Affairs Unit was submitted to Dr. Stephen Carson, a psychologist hired by DPS to conduct psychological evaluations of applicants for employment or re-employment. In addition to reviewing this background information and personally interviewing Reynolds, Dr. Carson conducted several written personality tests, including the MMPI, Wonderlic, Firo-B, and California Personality Inventory. On the basis of all this information, Dr. Carson placed Reynolds in Category 4, which indicates "Overriding Negative Factors." Under DPS employment regulations, an applicant who receives a Category 4 rating cannot be hired as a patrol officer.
 
 
 12
 After Dr. Carson performed his psychological evaluation, the Assistant Director of DPS "became aware that the background information provided to Dr. Carson was not of the type that he would normally consider." Therefore, the Assistant Director requested another psychological evaluation, which was performed by Dr. James Lange. Dr. Lange received the assignment from Dr. Carson, but he independently analyzed the scores Reynolds had received on the various personality tests administered by Dr. Carson. Although Dr. Lange did not review the Internal Affairs Unit background report or interview Reynolds, he also placed her in Category 4.
 
 
 13
 In support of her claim that the rejection of her application for re-employment was motivated by gender bias, Reynolds submitted an affidavit from Dr. Neal H. Olshan, a psychologist. Dr. Olshan had reviewed the psychological evaluations performed by Dr. Carson and Dr. Lange and stated that there were "[i]ndications of sexual bias regarding selection of variables to be used in placing Debi Reynolds within the 'overriding negative factors' categories." Dr. Olshan further stated:
 
 
 14
 Based upon my evaluation and testing of Debi Reynolds, review of records provided to me (evaluation data and testing of Dr. Carson and Dr. Lange), it is my professional opinion that the evaluations performed by Dr. Carson and Dr. Lange are flawed by the following factors: 1) incomplete data interpretation from the psychological testing; 2) selective use of information to substantiate what appears to be a bias position towards non-rehire; 3) indication of native sexual bias regarding Debi Reynolds; and 4) direct conflict with my evaluation and psychological testing data which indicates Debi Reynolds should have received a score which would have placed her in an eligibility category for rehire.
 
 
 15
 This evidence is sufficient to establish a triable issue of fact regarding whether the psychological evaluation of Reynolds, the sole reason given by DPS for rejecting her application, was sex biased. Accordingly, we reverse and remand for further proceedings on her disparate treatment claim.
 
 B. Disparate Impact
 
 16
 Reynolds also contends that the psychological evaluation required by DPS is invalid because it has a disparate impact on female applicants. In particular, she argues that the personality tests that comprise the evaluation are inherently biased against women. We reject these arguments and affirm the district court's grant of summary judgment on her disparate impact claim.
 
 
 17
 "Disparate impact involves a facially neutral employment criterion that has an unequal effect on members of a protected class; discriminatory intent need not be proved." Sischo-Nownejad, 934 F.2d at 1109; see also International Bhd. of Teamsters v. United States, 431 U.S. 324, 335-36 n. 15 (1977). To establish a prima facie case, the plaintiff must: "(1) show a significant disparate impact on a protected class, (2) identify specific employment practices or selection criteria[,] and (3) show the causal relationship between the identified practices and the impact." Antonio v. Wards Cove Packing Co., 810 F.2d 1477, 1482 (9th Cir.1987) (en banc). To satisfy the first part of this test, "the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs ... because of their membership in a protected group." Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994 (1988).
 
 
 18
 Here, Reynolds did not present any statistical evidence that the psychological evaluation has a disparate impact on female applicants as a group. The defendants, however, provided evidence that from 1985-1987, approximately 34% of male applicants for employment were disqualified due to their psychological evaluation, while only 13% of female applicants were disqualified on this ground. In the re-employment context, only two applicants have been disqualified by the psychological evaluation: Reynolds and a male applicant. Therefore, because she presented no evidence that the psychological evaluation disproportionately disqualified women, Reynolds did not establish a prima facie case of disparate impact. See Watson, 487 U.S. at 994; Sischo-Nownejad, 934 F.2d at 1109; Antonio, 810 F.2d at 1482.[2]
 
 C. Retaliation
 
 19
 Reynolds contends that DPS refused to rehire her in retaliation for her previous efforts to obtain a transfer to a position that would have accommodated her need to breast-feed her daughter. Because Reynolds failed to provide sufficient evidence to support her claim of retaliation, we affirm the district court's grant of summary judgment.
 
 
 20
 The plaintiff must first establish a prima facie case of retaliation by showing that she engaged in a protected activity, that she was thereafter subjected by her employer to adverse employment action, and that a causal link exists between the two. To show the requisite causal link, the plaintiff must present evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action. Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity.
 
 
 21
 Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir.1982) (citations omitted).
 
 
 22
 Reynolds filed her complaint with the Arizona Civil Rights Division several months after DPS rejected her application for re-employment; therefore the defendants' refusal to rehire her could not have been based on the filing of that complaint. Moreover, in her deposition, Reynolds stated that prior to her rejection for re-employment, she had never complained about sex discrimination to anyone at DPS. Similarly, in his affidavit, the Assistant Director of DPS stated: "I had no knowledge that [Reynolds] had made any statement or allegations that would give rise to any claim of discrimination, nor was I aware of any other DPS employees that may have been aware of any such allegations." Thus, Reynolds failed to establish a prima facie case of retaliation because she did not show that her employer was aware that she had engaged in a protected activity, or that such activity was the likely reason for the rejection of her application. See Cohen, 686 F.2d at 796.
 
 D. Attorney's Fees
 
 23
 Reynolds seeks an award of attorney's fees under 42 U.S.C. § 2000e-5(k), which permits attorney's fees to be awarded to a prevailing party in a Title VII action. "As a general rule, a party who obtains the reversal of judgment on appeal is not a 'prevailing party' unless such reversal also resulted in entry of judgment for that party." Coral Constr. Co. v. King County, 941 F.2d 910, 933 (9th Cir.1991) (citation omitted), cert. denied, 112 S.Ct. 875 (1992). No such judgment has yet been entered here; accordingly we decline to award attorney's fees to Reynolds at this time. See id.
 
 
 24
 The defendants also request attorney's fees under section 2000e-5(k). We deny their request because Reynolds's action is not frivolous, unreasonable, or without foundation. See Sanchez v. City of Santa Ana, 936 F.2d 1027, 1041 (9th Cir.), cert. denied, 112 S.Ct. 417 (1991).
 
 
 25
 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 DPS policy regarding re-employment provides that the "re-employment advisory review board may review past evaluations of the candidate, [and] interview former co-workers/supervisors." General Order 51.10(III)(D)(2). It is undisputed that Reynolds received "standard" evaluations during her tenure as an officer
 
 
 [2]
 Reynolds's reliance on Dr. Olshan's affidavit to support her disparate impact claim is misplaced. Dr. Olshan's affidavit states only that there were indications of sexual bias regarding the application of the psychological tests to Reynolds. His affidavit does not establish that the tests were inherently biased against women as a group; indeed, any such statement would have been refuted by the defendants' statistical evidence. Accordingly, Dr. Olshan's affidavit does not establish a genuine issue of material fact on her disparate impact claim. See Watson, 487 U.S. at 994